The bill of complaint is filed to compel the defendants to tear down certain buildings alleged to be private and public nuisances.
The matter is now before the court on the return of an order requiring the defendants to show cause why a preliminary mandatory injuction should not issue forthwith directing them to abate the alleged nuisances on premises known as 258, 260 and 262 Grove street, Jersey City, by reason of imminent danger of collapse of the buildings forming part of said premises, and, unless abated, the complainant be empowered to abate same and charge the cost thereof to *Page 187 
the respective owners of said premises. The bill alleges that the defendant John J. Coppinger is the owner of premises known as 256 and 260 Grove street; that the premises known as 258 Grove street "are owned entirely or partly owned by Geraldine Shinners;" that the premises known as No. 262 Grove street are owned by Elizabeth Davis. It clearly indicates that the nuisances alleged as to the several properties are not identical, and that the several defendants have not a community of interest between them with respect to the subject-matter of the litigation. It contains also matters not related, and with considerable of which the respective defendants are not mutually concerned. There is manifestly such a misjoinder of defendants as to make the bill objectionable. While the old practice objection of multifariousness has been substantially done away with under the present practice, nevertheless, objection to the bill for misjoinder may be made by means of motion to strike.
It is alleged that the complainant, "through its department of superintendent of buildings," on or about October 28th, 1926, made an examination and investigation of the premises known as Nos. 256, 258, 260 and 262 Grove street, Jersey City, and that "as a result of said investigation by the building department of Jersey City," it was discovered that the party wall between Nos. 258 and 260 Grove street was badly cracked and dangerous both in front and rear; that the front wall of No. 258 Grove street was bulging out between the entrance of the houses known as No. 258 and 260 Grove street for a distance of over three inches over the perpendicular front line; that the rear wall of 258 Grove street was in a very dangerous condition, having cracked and bulged out from its perpendicular line; that as a result of the condition of the party wall between Nos. 258 and 260 Grove street and party walls Nos. 256 and 258 Grove street and Nos. 260 and 262 Grove street were becoming weakened and cracked so that the walls of all four houses, because of strain, were becoming weakened; that "due notice" of such conditions was given to defendant John J. Coppinger, the owner of Nos. 256 and 260 Grove street, who expressed "to the building department" his willingness to make immediate *Page 188 
repairs, but the defendant Geraldine Shinners, "who owns No. 258 Grove street, either in its entirety or as a partial owner thereof," failed to take any action to repair the same; that on November 5th, 1926, "pursuant to the building code of Jersey City," the "building inspector" did cause a survey to be made of the premises No. 258 Grove street by a "survey committee." It is claimed that the "survey" was caused to be made by the "building inspector," yet the reports of Bradley and Billington indicate that the former was appointed by the "superintendent of buildings," and the latter by the "building department." It is alleged that on November 22d 1926, "said building inspector" did again cause to be served upon Geraldine Shinners a notice that the "survey committee" filed their report (a true copy of which is said to have been annexed to said notice), wherein the said committee declared the building at No. 258 Grove street to be in a dangerous and unsafe condition; and "the said building inspector" ordered said Geraldine Shinners to tear down the front wall, rear wall and also the foundation where necessary; that said Geraldine Shinners did nothing toward endeavoring to repair the conditions which existed, nor did she make any effort to tear the said building down, and a more recent inspection indicated that a more dangerous and more serious condition developed (particularizing); that from the present state of the building there is no way of repairing or doing anything to Nos. 258 and 260 Grove street other than to tear the buildings down; that the owner of No. 262 Grove street may be able, if steps are taken immediately to shore up the building to save the same from falling; that the buildings Nos. 258 and 260 Grove street areboth public and private nuisances, which, unless abated, would be likely to result in serious injury to the public; that on April 20th, 1927, "due notice" of all the alleged facts was given to the defendants Geraldine Shinners and John J. Coppinger, but nothing has been done by either of said defendants to abate the said nuisances or to remove said buildings. Attached to and made part of the bill are affidavits of John F. Bradley, described as "one of the building inspectors of Jersey City, connected with the department of superintendent of buildings," *Page 189 
and of James Billington, described as a "builder in Jersey City who has been in the building business over twenty-five years," and of Edward Spoerer, described as "a structural engineer connected with the building department of Jersey City," which purports to sustain the allegations of the bill as to the nuisances complained of; also a photograph, referred to asSchedule 2, which is said to show the true conditions of the rear of said building; and a photograph, referred to as Schedule3, which is said to show the front of said buildings; also a copy of a communication, bearing date November 12th, 1926, addressed by "John F. Bradley, Inspector," to "John Saul, Esq., Superintendent of Buildings, Jersey City, N.J.," wherein Bradley, "as a member of the survey committee" appointed by said Saul to examine the condition of the building at 258 Grove street, Jersey City, New Jersey, reports his findings in regard thereto; also a copy of a communication, bearing date November 12th, 1926, addressed by James Billington to "Mr. John Saul, Superintendent of Buildings, Jersey City, N.J.," wherein Billington says: "At the request of the building department I have examined the dwelling No. 258 Grove street and find the following conditions" (then follows his report in regard thereto). The allegations in the bill that the complainant, "through its department of superintendent of buildings," made an examination and investigation of the premises referred to, and that as a result of said investigation "by the building department of Jersey City" it was discovered, c., and that "due notice" of the conditions complained of was given to the defendant John J. Coppinger, the owner of Nos. 256 and 260 Grove street, who expressed "to the building department" his willingness to make immediate repairs, and that the defendant Geraldine Shinners, "who owns No. 258 Grove street, either in its entirety or as a partial owner thereof," failed to take any action to repair the same, and that "pursuant to the building code of Jersey City" the building inspector did cause a survey to be made of the premises No. 258 Grove street by a "survey committee," and that "said building inspector" did again cause to be served upon the said Geraldine Shinners a notice that the survey committee filed *Page 190 
their report "wherein the said survey committee declared the building at No. 258 Grove street to be in a dangerous and unsafe condition," and that "the said building inspector" did order the said Geraldine Shinners to tear down the front wall, rear wall and party wall, and also the foundation where necessary, cannot be regarded as good pleading in behalf of a municipal corporation, which can act only through duly accredited officers and agents when lawfully authorized. The authority of the "building inspector," the "department of superintendent of buildings" or the "building department of Jersey City" to perform the acts attributed to them is not disclosed; nor does the bill disclose the provisions of the "building code of Jersey City," "pursuant to which" it is alleged the building inspector caused a survey to be made of the premises aforesaid, nor is the authority of the "survey committee" to declare the building at No. 258 Grove street to be in a dangerous and unsafe condition, or the authority of the "building inspector" to order the defendant Geraldine Shinners to tear down the building No. 258 Grove street, in whole or in part, or the significance of the "due notice" alleged to have been given the defendant John J. Coppinger, disclosed.
In Hutton v. Camden, 39 N.J. Law 122, it is said that the question of whether a nuisance exists, cannot be settled except in a regular course of law, before the established courts of law or equity, and resolutions of officers, or of boards organized under the authority of municipal charters, cannot, to any degree, control such decision; that the right to abate public nuisances is a common law right, and is derived, in every instance of its exercise, from the same source — that of necessity; that the finding of a sanitary committee, or of a municipal council, or of any other body of a similar kind, can have no effect whatever, for any purpose, upon the ultimate disposition of a matter of this kind, and cannot be used as evidence in any legal proceeding, for the end of establishing, finally, the fact of nuisance. The complainant cannot, by a mere declaration that the buildings in question are nuisances, establish their character as such. 20 R.C.L. 430, 431 § 46. *Page 191 
No answers or affidavits were submitted in behalf of either of the defendants. There are no proofs before me as to whether the defendants named are the only parties in interest in the subject-matter of the litigation. It may be that there are mortgagees, lessees or tenants in possession, whose property rights or interests would be affected by such order or decree as the court may make, and if such be the fact, such parties should be entitled to be heard in limine. The allegation that the premises known as 258 Grove street, Jersey City, "are owned entirely or partly owned by Geraldine Shinners," is suggestive that diligence has not been exercised to implead proper and necessary parties in interest. Such an allegation of ownership is too dubious upon which to predicate a claim for a preliminary mandatory injunction to demolish the building which is part of said premises. The "due notice" referred to in the bill is applicable only to the defendant Coppinger. There is no allegation of "due notice" to the other defendants. I am not aware of, nor has counsel for the complainant referred me to, any authority which would warrant the court in granting the relief sought, other than the case of Pennsylvania Railroad Co. v.Kelley, 77 N.J. Eq. 129. In the case cited a writ for preliminary mandatory injunction was issued conditionally, the condition being such as I do not consider may be imposed upon the complainant — a municipal corporation, or if imposed, be complied with by its enforceable obligation. Vice-Chancellor Leaming, in the aforesaid case, says:
"Under the circumstances presented, I think it appropriate to require complainant, before the writ issues, to execute a bond to defendants, in an amount to be ascertained at the time the order for the writ is signed, conditioned to pay the defendants such damages as may be sustained by them by reason of the issuance of the writ, in the event of its being ascertained at final hearing, or on appeal in the event of an appeal, that complainant was not entitled to the relief at this time awarded."
In Bailey v. Schnitzius, 45 N.J. Eq. 178, which appears to be regarded as an accepted authority, it is said that a mandatory injunction "is rarely granted before final hearing *Page 192 
or before the parties have had full opportunity to present all the facts in such manner as will enable the court to see and judge what the truth may be. It is always granted cautiously, and is strictly confined to cases where the remedy at law is plainly inadequate. A preliminary mandatory injunction will be ordered only in cases of extreme necessity." It is ordered only in cases of obstruction to easements or rights of like nature. RogersLocomotive Works v. Erie Railroad Co., 20 N.J. Eq. 379;Wakeman v. New York, Lake Erie and Western Railroad Co.,35 N.J. Eq. 496; see, also, McCran v. Public Service RailwayCo., 95 N.J. Eq. 22 (at pp. 27, 28); McCran v. WesternUnion Telegraph Co., 94 N.J. Eq. 281.
A court of equity should only exercise its power to cause public or private nuisances to be removed or abated when the fact of nuisance is beyond doubt, or has been settled by a verdict at law. Attorney-General v. Heishon, 18 N.J. Eq. 410, 412.
I am of the opinion that the preliminary mandatory injunction sought by the complainant should be denied, and the order to show cause heretofore issued dismissed, and I will advise an order to such effect.